HENRY E. HASTINGS *vs.* ALVARO J. W. THOMPSON.

Argued May 10, 1893.    Reversed July 14, 1893.

**Note "with Current Rate of Exchange" is Negotiable.**

The fact that an instrument for the payment of a specific sum of money is made payable with current exchange on a place other than the place of payment does not prevent its being a promissory note.

Appeal by plaintiff, Henry E. Hastings, from an order of the District Court of Dakota County, *F. M. Crosby,* J., made October 20, 1892, overruling his demurrer to the answer.

The defendant, Alvaro J. W. Thompson, made his fifteen promissory notes July 15, 1888, dated that day, whereby for value received he promised in and by each note to pay to the order of John Johnston, A. J. Smith, F. E. Searle, William M. Bushnell and A. R. Bushnell on June 15, 1891, six hundred dollars at the office of Bushnell & Bushnell, St. Paul, Minn., together with current exchange on New York City, and interest at the rate of eight per cent. per annum, payable semiannually; in all, $9,000 and exchange and interest. The payees sold and indorsed the notes to the plaintiff before their maturity. (See *Harris* v. *Johnston, ante,* p. 177.) Divers payments were made upon these notes. This action was to recover the unpaid balance, $6,406.25, with interest from December 15, 1890. The complaint contained a count upon each note separately, and omitted all mention of the exchange on New York City. The defendant by answer set out a copy of one of the notes, and alleged that the others were in the same terms. He further answered that at the request and for the accommodation of the payees, he accepted a deed from them of certain lots in Summit Park Addition to South St. Paul, in Dakota County, and gave back the fifteen notes in suit, secured by

fifteen mortgages, each upon one of the lots, and then reconveyed the lots to the Bushnells and their associates. The answer then stated other facts constituting a good defense to the notes unless they were negotiable, and in the hands of a *bona fide* indorsee for value before maturity. The plaintiff demurred to this answer, and the sole question presented was, whether the insertion in the notes of the words, "*with current exchange on New York City*," rendered the notes non-negotiable and open to the defense interposed. It was admitted by the answer that plaintiff bought the notes in the due course of business, for value, before maturity, without notice of any defense or infirmity. The trial court overruled the demurrer and plaintiff appeals.

*H. V. Rutherford*, for appellant.

It is submitted that the provision in the notes for the payment of exchange did not deprive them of their negotiability. The question does not appear to have been raised before in this court. It has, however, been passed upon by the courts of other states, and the weight of reason would seem to be in favor of the negotiability of such instruments. Such is the ruling in the courts of last resort of Michigan and Wisconsin, in well-considered cases of comparatively recent date. And such is the holding of the United States Circuit Court for the District of Illinois. And the doctrine receives the support and approval of both Daniel and Tiedeman in their treatises upon Negotiable Instruments. To the contrary are the holdings of the courts of last resort in South Carolina and Illinois, the United States Circuit Court of this district, the Court of Appeals of the City of St. Louis, the Supreme Court of the District of Columbia, and an inferior court in the city of Philadelphia. *Smith* v. *Kendall*, 9 Mich. 241; *Johnson* v. *Frisbie*, 15 Mich. 286; *Morgan* v. *Edwards*, 53 Wis. 599; *Leggett* v. *Jones*, 10 Wis. 34; *Bradley* v. *Lill*, 4 Biss. 473; Daniel, Neg. Inst., §§ 54, 54a.

*Stringer & Seymour*, for respondent.

Whether a stipulation for the payment of exchange, inserted in a promissory note, renders the same nonnegotiable is a question upon which the courts of last resort have entertained conflicting views. This court has never passed upon the question. It has however decided.

that on questions of commercial law it is eminently desirable that there be uniformity. *National Bank of Commerce* v. *Chicago, B. & N. R. Co.*, 44 Minn. 224; *Windsor Sav. Bank* v. *McMahon*, 38 Fed. Rep. 283; *Hughitt* v. *Johnson*, 28 Fed. Rep. 865.

It would be unfortunate if a citizen of this state, when sued in the United States Court, could successfully claim this note to be nonnegotiable, but could not successfully make the claim in the state court.

The following additional authorities hold that a provision for exchange in a promissory note renders it nonnegotiable. *Fitzharris* v. *Leggatt*, 10 Mo. App. 527; *Lowe* v. *Bliss*, 24 Ill. 168; *Russell* v. *Russell*, 1 MacAr. D. C. 263; *Read* v. *McNulty*, 12 Rich. 445; *Carroll Co. Sav. Bank* v. *Strother*, 28 S. C. 504; *Philadelphia Bank* v. *Newkirk*, 2 Miles, 442; *Palmer* v. *Fahnestock*, 9 Up. Can. C. P. 172; *Saxton* v. *Stevenson*, 23 Up. Can. C. P. 503.

MITCHELL, J. The only point raised on this appeal is whether the instruments sued on are promissory notes, for, if they are, they are unquestionably negotiable under the law merchant. They are promises to pay specified sums of money in St. Paul, "with current exchange on New York City;" and the only question is whether this provision as to exchange renders the sums required to discharge them uncertain, within the meaning of the familiar rule that one of the essential qualities of a promissory note is that the amount to be paid must be fixed and certain, and not contingent. In the definitions of a promissory note or bill of exchange it is generally, if not always, stated that the amount necessary to discharge it must be ascertainable from the face of the paper itself, without having to refer to any extrinsic evidence. Construing this definition literally, it must be admitted that the instruments in question do not strictly fall within it, for, of course, extrinsic evidence must be resorted to in order to ascertain the rate of exchange at a given time between two places. Upon examination of the reports and text-books it is surprising how little direct authority of any value is to be found as to the effect of the addition of such a provision to an instrument for the payment of money. Daniel, Randolph, and Tiedeman state in general that such a provision does not affect the commercial or negotiable character of

the paper, but none of them discuss it at any length, and all of them treat of the question as if it only went to the negotiability of the instruments, whereas the real question lies back of that, and is whether they are promissory notes or bills of exchange at all. Tied. Com. Paper, § 28a; Rand. Com. Paper, § 200; Daniel, Neg. Inst. § 54. We have found no English case directly in point, and none bearing on the question, except *Pollard* v. *Harries*, 3 Bos. & P. 335, where such an instrument was declared on as a promissory note. If the question was authoritatively settled in the leading commercial states of the Union or in the Federal Courts, we would be inclined, for the sake of uniformity, to follow their decisions; but we have been unable to find that the supreme court of the United States, or of either Massachusetts, New York, or Pennsylvania, has ever passed upon the question. The only cases, state, federal, or colonial, which we have found which may be considered as having passed on the question, are the following, which may be classified thus: That such instruments are not promissory notes: *Lowe* v. *Bliss*, 24 Ill. 168; *Read* v. *McNulty*, 12 Rich Law, 445; *Carroll Co. Sav. Bank* v. *Strother*, 28 S. C. 504, (6 S. E. Rep. 313); *Palmer* v. *Fahnestock*, 9 Up. Can. C. P. 172; *Saxton* v. *Stevenson*, 23 Up. Can. C. P. 503; *Philadelphia Bank* v. *Newkirk*, 2 Miles, 442; *New Windsor Bank* v. *Bynum*, 84 N. C. 24; *Russell* v. *Russell*, 1 MacAr. 263; *Fitzharris* v. *Leggatt*, 10 Mo. App. 527; *Hughitt* v. *Johnson*, 28 Fed. Rep. 865; *Windsor Sav. Bank* v. *McMahon*, 38 Fed. Rep. 283. That such instruments are promissory notes: *Smith* v. *Kendall*, 9 Mich. 242; *Johnson* v. *Frisbie*, 15 Mich. 286; *Leggett* v. *Jones*, 10 Wis. 35; *Morgan* v. *Edwards*, 53 Wis. 599, (11 N. W. Rep. 21;) *Bradley* v. *Lill*, 4 Biss. 473. In very few of these cases is the question discussed at any length, or considered on principle. Some of them were decided by courts of inferior jurisdiction, and in others the remarks of the court were *obiter*. Many of those which hold that such instruments are not promissory notes rest, without discussion, upon a strict literal construction of the rule that the sum to be paid must appear from the face of the paper without resort to extrinsic evidence. About the only cases where the question is discussed at any length upon principle or authority

are *Smith* v. *Kendall*, *Bradley* v. *Lill*, *Morgan* v. *Edwards*, and *Windsor Sav. Bank* v. *McMahon*, *supra.*

In view of this state of the decisions, while in mere numbers the decided weight of authority may be in favor of the contention of the defendant, we feel at liberty to decide the question in the way we deem most in accordance with principle and business usages, and in accordance with the rule which, in view of such usages, the leading courts of the country are most likely to finally settle down upon. The following are, in brief, the considerations which have led us to the conclusion that such instruments ought to be held to be promissory notes under the law merchant:

1. The reason and purpose of the rule that the sum to be paid must be certain is that the parties to the instrument may know the amount necessary to discharge it, without investigating facts not within the general knowledge of every one, and which may be subject to more or less uncertainty, or more or less under the influence or control of one or other of the parties to the instrument. The provision for the payment of the current rate of exchange between the place of payment and some other place is not within the reason of this rule, or subject to the evils or inconveniences which it was designed to prevent. While the rate of exchange is not always the same, and while it is technically true that resort must be had to extrinsic evidence to ascertain what it is, yet the current rate of exchange between two places at a particular date is a matter of common commercial knowledge, or at least easily ascertainable by any one, so that the parties can always, without difficulty, ascertain the exact amount necessary to discharge the paper. It seems to us that within the spirit of the rule requiring precision in the amount to be paid a provision for the payment of the current rate of exchange in addition to the principal amount named does not introduce such an element of uncertainty as deprives the instrument of the essential qualities of a promissory note. A provision for the payment of exchange is very different from one for the payment of reasonable attorneys' fees in case of suit, as in *Jones* v. *Radatz*, 27 Minn. 240, (6 N. W. Rep. 800.) The latter introduces an element of uncertainty very different both in kind and degree, from that introduced by the former. Not only is the amount of

the attorneys' fees incapable of either easy or definite ascertainment, but the amount of it is more or less under the control of the holder of the instrument. Moreover, such a provision has never been considered in business circles as properly ancillary or incidental to commercial paper, or any part of its legitimate "luggage."

2. The law merchant, including the law of negotiable paper, is founded upon, and is the creature of, commercial usage and custom. Custom and usage have really made the law, and courts, in their decisions, merely declare it. The law of negotiable paper is not only founded on commercial usage, but is designed to be in aid of trade and commerce. Its rules should, therefore, be construed with reference to and in harmony with general business usages, and, as far as possible, with the common understanding in commercial circles. This was the very purpose of the statute of Anne placing promissory notes on the same footing as bills of exchange, and thus setting at rest a question upon which there had been some difference of opinion in the courts. Now, we think we are safe in saying, and justified in taking notice of the fact, that if bankers or other business men accustomed to dealing in commercial paper were asked whether such an instrument is a promissory note, and whether they would deal with it as negotiable paper, the answers would, in almost every instance, be unhesitatingly in the affirmative. We have no doubt but that this is the way in which such paper is generally looked upon and treated in commercial and other business circles; and, if so, the courts should, as far as possible, make their decisions to conform to this general custom and understanding. We recognize the importance of simplicity and certainty in the terms and conditions of commercial paper; and appreciate the objections to permitting it to be loaded down with unnecessary "luggage," but we cannot see, under all the circumstances, and especially in view of what we believe to be the commercial usage, that any practical evil will result from permitting the addition of such a provision for the payment of current exchange on the principal amount. Nor are we disposed, as a rule, to extend the quality of negotiable paper to contracts for the payment of money beyond the strict limits of the already established rules of law; but to exclude from that category paper like that under consideration would be to exclude the very class of paper

which ought to be held negotiable, if any promissory notes ought to be so held,—paper given and taken in commercial transactions, properly so called; for rarely, if ever, would a provision for exchange be incorporated in any other.

Order reversed.

Application for reargument denied July 20, 1893.

(Opinion published 55 N. W. 968.)